# EXHIBIT 1

```
 1            IN THE UNITED STATES DISTRICT COURT
       IN AND FOR THE WESTERN DISTRICT OF WASHINGTON
 2                       AT SEATTLE
   _____
 3
   KATHRYN LISTER, an individual,    )
 4                                   )
                                     )
 5              Plaintiff,           ) NO. 2:18-cv-00961-JLR
                                     )
 6        vs.                        )
                                     )
 7  HYATT CORPORATION, a Delaware    )
    corporation d/b/a HYATT REGENCY  )
 8  BELLEVUE,                        )
                                     )
 9                                   )
                Defendant.           )
10
   _____
11
   _____
12
             Deposition Upon Oral Examination
13
                           of
14
                   ROXANNE TAGGART-HUGO
15
   _____
16

17                      1:00 p.m.
                     February 6, 2019
18                 535 East Sunset Way
                    Issaquah, Washington
19

20

21

22

23

24
   Zoya O. Spencer, Court Reporter, CCR #2418
25
```

*Spencer & Associates   (206)382-9695   Court Reporters*

1   responsible before midnight for making sure that there
2   aren't any spills or hazards?
3          MR. SKINNER:  Object to form.
4      A.  Again, I would say all associates that are
5   walking around all of the common areas.  We do have
6   lobby porters as part of our housekeeping team that
7   services those restrooms, as well as common areas as
8   well.
9      Q.  All right.  So let's talk about the shift that
10  you were on that night.  Okay?
11     A.  Okay.
12     Q.  Do you remember this night?
13     A.  Not very well.
14     Q.  Do you remember speaking with Kevin Lister?
15     A.  Yes.
16     Q.  Do you recall speaking with the security officer
17  Kyle Crandall?
18     A.  Yes.
19     Q.  Do you recall seeing the spill on the floor
20  outside of the bathroom?
21     A.  No.
22     Q.  Did anybody tell you about the spill on the
23  floor out of the bathroom?
24     A.  I don't remember being reported the spill.  But
25  once I looked in my emails, it was -- I had written that

1    the 13 Coins hostess had informed me.
2        Q.   Okay.  Do you know what time that was?
3        A.   I didn't write in the email what time it was.
4    Again, I would have to speculate exactly what I wrote
5    down.  But, you know, in following email chains, I said
6    before midnight.
7        Q.   Do you know when Kathryn fell, what time?
8        A.   I would have to speculate the exactly what time,
9    but I wrote around about midnight, I think I wrote
10   12:05ish.
11       Q.   Do you know where you got that time from?
12       A.   Looking at the time on the computer and writing
13   it down on a note.
14       Q.   Do you know whether that the time would have
15   been when you learned about it from the person from 13
16   Coins?
17       A.   I don't remember.
18       Q.   Do you know what time it was that Kathryn fell?
19       A.   No.
20       Q.   There's video of Kathryn falling.  Have you seen
21   that video?
22       A.   I don't think so, because as an assistant
23   manager we don't get sent the security reports or have
24   ability to see the films.
25       Q.   Okay.  Did any of your managers talk to you

1  it's very rare that you don't have something else to do
2  or somewhere else to go to.
3      Q.  All right, thank you.
4      My understanding is that at midnight there's a
5  cleaning service that comes, Ace Cleaning and Staffing?
6      A.  I'm not positive what time they get there, but
7  yes, we do hire Ace Cleaning.
8      Q.  What type of interaction do you have with the
9  Ace Cleaning staff?
10     A.  Say hello to them.
11     Q.  Do you tell them that there's something that
12 needs cleaning?
13     A.  If there was anything particular, but they have
14 a specific list of responsibilities.
15     Q.  Do you remember how the spill on the floor got
16 cleaned up that night?
17     A.  I don't remember.  I don't remember exactly who
18 cleaned it up or when it was cleaned.
19     Q.  All right.  Do you know, as you've testified
20 earlier, when was it -- you testified that you learned
21 about Kathryn falling from the gal at 13 Coins.  Did she
22 come to you at the front desk or did you see her
23 somewhere else?
24     A.  I'm not positive, but it's not uncommon for one
25 of the hostesses at 13 Coins to come to our desk or to

1    call.  They have a speed dial number.
2        Q.  So she could have called you?
3        A.  Called, walked over.
4        Q.  Do you remember what she told you?
5        A.  I don't remember exactly what she told me, but
6    from my email what I wrote was that she informed me that
7    there was a fall.
8        Q.  Okay.  Did she tell you who it was that fell?
9        A.  I don't remember, but -- yeah, I don't remember.
10       Q.  All right.  And do you remember whether she told
11   you how the person fell?
12       A.  Like where they fell or --
13       Q.  What had happened.
14       A.  No, I don't remember.
15       Q.  Do you recall her telling you that she had
16   slipped in vomit?
17       A.  I don't remember.
18       Q.  Okay.  And do you know who it was that stood by
19   after -- at the spill site and remained there until it
20   was cleaned up?
21       A.  I don't remember exactly who it was.  But,
22   again, we would have instructed somebody.
23       Q.  All right.  Going back to Exhibit 2, would that
24   have reasonably been either yourself, Daniel, Jaeson, or
25   a security person from Kemper?

1    almost midnight, just before midnight.  And you can see
2    her having trouble walking.  Can you see that?
3         A.   Yes.
4         Q.   And there's the woman with the blonde hair,
5    sleeveless shirt.  And did she appear to step over
6    something on the floor?
7         A.   Or take a large step.
8         Q.   Okay.  So now we know, according to the video --
9    I'm assuming the video time is correct.
10        A.   I would say so.
11        Q.   Is there any reason to question the time on the
12   video?
13             MR. SKINNER:  Objection, calls for speculation,
14        lack of foundation.
15        A.   I didn't mean to say the wrong time, I'm sorry.
16        Q.   It's okay, don't apologize.  What you've told us
17   in your testimony is that it was -- well, actually let's
18   go back to Exhibit 1.  Exhibit 1 is Mr. Crandall's
19   statement on page 4 of 5 and he says he walked through a
20   puddle of vomit at 12:21 a.m.; do you agree with that?
21        A.   He says that.
22        Q.   Do you agree that's what he says?
23        A.   Yes.
24        Q.   And he said that he went immediately to the
25   front desk to report the spill, right?

1   A.   That's what the report says.

2   Q.   Okay. And you told him that someone -- a woman
3   had fallen near the bathroom. That woman would have
4   been Kathryn Lister?

5   MR. SKINNER:   Objection, calls for speculation.

6   Q.   Was there any other woman that fell that night?

7   A.   Since I've been working there, this is the first
8   fall I've encountered.

9   Q.   Okay. So what I wanted to ask you is, from
10  Mr. Crandall's report saying that he came to the front
11  desk after 12:21 in the morning, and now we know that
12  Kathryn fell at about 11:55, that's 26 minutes; do you
13  agree?

14  A.   From the report, yes.

15  Q.   And during that 26 minutes, no one else reported
16  that there was a spill on the floor outside of the
17  bathroom to you?

18  A.   Not that I know of.

19  Q.   I showed you the video of the two girls who went
20  toward the elevator and then detoured and went toward
21  the bathroom, and they looked like they were laughing,
22  having a good time, one of them looked like she was
23  bending over somewhat. Other than that, did you see
24  anything in any of the videos that we looked at that
25  appeared someone had thrown up on the floor?

C E R T I F I C A T E

STATE OF WASHINGTON )
COUNTY OF KING      )

I, the undersigned Washington Certified Court Reporter, pursuant to RCW 5.28.010 authorized to administer oaths and affirmations in and for the State of Washington, do hereby certify:

That the annexed and foregoing deposition of each witness named herein was taken stenographically before me and reduced to typewriting under my direction.

I further certify that each said witness was given the opportunity to examine, read and sign his/her deposition after the same was transcribed unless indicated in the record that the parties and each witness waived the signing.

I further certify that all objections made at the time of said examination to my qualifications or the manner of taking each deposition, or to the conduct of any party have been noted by me upon each deposition.

I further certify that I am not a relative or an employee or attorney or counsel of any of the parties to said action, or a relative or employee of any such attorney or counsel, and that I am not financially interested in the said action or the outcome thereof.

1    I further certify that each witness before
2    examination was by me duly sworn to testify the truth,
3    the whole truth and nothing but the truth.
4         I further certify that the deposition as
5    transcribed is a full, true and correct transcript of
6    the testimony, including questions and answers, and all
7    objections, motions and exceptions of counsel made and
8    taken at the time of the foregoing examination.
9         I further certify that I am sealing the
10   deposition in an envelope with the title of the
11   above-referenced cause thereon and marked "Deposition"
12   with the name of each witness and promptly delivering
13   the same to the ordering attorney.
14        IN WITNESS WHEREOF, I have hereunto affixed my
15   electronic signature this 8th day of March 2019.
16   The document has been digitally signed in accordance
17   with Washington Court Rules GR 30(D)(2)(B).

19   _____
20     /s/ Zoya O. Spencer
        Washington State Certified Court Reporter
        WA CCR No. 2418
21      License effective until: 11/22/2019

**SPENCER & ASSOCIATES, COURT REPORTERS**
**P.O. BOX 44**
**GRANITE FALLS, WA 98252**
**206-382-9695**
**Email: Zsop@aol.com**

Court Reporter:  Zoya Spencer, CCR # 2418

DEPOSITION OF:  ROXANNE TAGGART-HUGO, taken 2-6-2019
LISTER vs. HYATT CORPORATION

       Please make all corrections or clarifications to your testimony on this sheet, showing page and line number and the nature of the change.  If there are no changes, write "none" across the page.  Sign this sheet on the line provided and send to our court reporting firm for dissemination to parties.

Page and line #      Correction/change and reason

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

       Except for the changes noted above, the same is a true, correct and complete transcription of the answers given by me to the questions therein recorded.

SIGNATURE_____ DATE_____