UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KATHRYN LISTER,

                    Plaintiff,

        v.

HYATT CORPORATION,

                    Defendant.

CASE NO. C18-0961JLR

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT AND
TO EXCLUDE EXPERT
WITNESSES

## I.    INTRODUCTION

Before the court are four motions:  (1) Plaintiff Kathryn Lister's motion for partial

summary judgment on certain affirmative defenses (1st Plf. PSJM (Dkt. # 22)); (2)

Defendant Hyatt Corporation's ("Hyatt") motion for summary judgment on Ms. Lister's

claims (Def. MSJ (Dkt. # 30)); (3) Ms. Lister's motion for partial summary judgment on

her status as an invitee (2d Plf. PSJM (Dkt. # 32)); and (4) Hyatt's motion to exclude

expert testimony (Def. MTE (Dkt. # 40)).  The court has reviewed the motions, the

parties' submissions filed in support of and in opposition to the motions, the relevant

portions of the record, and the applicable law.  Being fully advised,[1] the court (1) GRANTS in part and DENIES in part Ms. Lister's motion for summary judgment on certain affirmative defenses; (2) GRANTS in part and DENIES in part Hyatt's motion to exclude expert testimony; (3) GRANTS Ms. Lister's motion for partial summary judgment on her status as an invitee; and (4) DENIES Hyatt's motion for summary judgment.

## II.    BACKGROUND[2]

### A.    Factual Background

This matter arises from a slip and fall at the Hyatt Regency Bellevue in Bellevue, Washington, which is owned by Hyatt.  (*See* Compl. (Dkt. # 1-2) ¶¶ 2.1-2.8.)  Ms. Lister alleges that, on June 15, 2017, she slipped and fell in vomit near the entrance to the women's restroom next to Hyatt's lobby.  (*See id.*)  Ms. Lister alleges she incurred injuries from the fall.  (*See id.* ¶ 3.4.)

//

---

[1] Ms. Lister requests oral argument on her motion for partial summary judgment on her status as an invitee (*see* 2d Plf. PSJM at 1) and Hyatt's motion for summary judgment (Plf. Resp. SJ (Dkt. # 45) at 1).  Hyatt does not request oral argument on any of the motions.  (Def. Supp. Resp. PSJ (Dkt. # 36) at 1; Def. MTE at 1; 2d Def. Resp. PSJ (Dkt. # 46) at 1; Def. MSJ at 1.) Because oral argument would not assist the disposition of these motions, the court denies Ms. Lister's requests.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] In evaluating relevant evidence for purposes of this motion for summary judgment, the court is guided by the following principles.  The court does not make credibility determinations or weigh conflicting evidence, but rather views all evidence and draws all inferences in the light most favorable to the non-moving party.  *T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)); *see also Hrdlicka v. Reniff*, 631 F.3d 1044, 1048, 1051 (9th Cir. 2011).  The court, however, can rely on the indisputable portions of videotape submitted as evidence.  *See Scott v. Harris*, 550 U.S. 372, 380-01 (2007).

On June 15, 2017, shortly before midnight, Ms. Lister went to the 13 Coins Restaurant in Bellevue, Washington. (*See* 10/17/19 Skinner Decl. (Dkt. # 31) ¶ 2, Ex. 1 ("Lister Dep.")[3] at 25:1-20 (indicating that Ms. Lister only recalls the time she arrived at 13 Coins from a recent review of Hyatt's security video); 11/1/19 Graham Decl. (Dkt. # 44) ¶¶ 2-3, Exs. 1-2 (attaching copies of the June 15, 2017, Hyatt Regency Bellevue security video) (hereinafter, "Video"); *see also* Def. MSJ at 3 (citing Compl. ¶ 2.2) (indicating the date of Ms. Lister's visit to 13 Coins was June 15, 2017).) Shortly after 11:55 p.m., Ms. Lister slipped and fell in vomit that was on the floor of Hyatt's lobby, which adjoins 13 Coins. (*See* Lister Dep. at 36:25-37:11; *see also* Video at 11:55.)

On the night of her fall, Ms. Lister took an elevator from the parking garage directly into 13 Coins. (Lister Dep. at 25:21-26:1; 29:4-8.) She did not pass through Hyatt to get to the restaurant. (*See id.*) A pair of interior doors connects Hyatt's lobby and 13 Coins. (*See* Lister Dep. at 32:4-12.) On the night of Ms. Lister's fall, the double doors between 13 Coins and Hyatt's lobby were wide open. (*Id.* at 32:6-9, 13-16.)

Hyatt produced a copy of the security video from the lobby area on the night of June 15, 2017. (*See* Video.) At approximately 11:25 p.m., the video depicts two women walking from 13 Coins into Hyatt's lobby. (*See id.*) The two women proceed down the corridor adjacent to Hyatt's lobby, and one of the women appears to vomit on the tile

---

[3] Portions of Ms. Lister's deposition appear in other places on the court's docket. (*See, e.g.*, 10/17/19 Graham Decl. (Dkt. # 33) ¶ 4, Ex. B; 10/22/19 Skinner Decl. (Dkt. ## 37, 38 (praecipe)) ¶ 2, Ex. 1.) Irrespective of where Ms. Lister's deposition is found on the docket, the court will cite to this deposition as "Lister Dep."

flooring in the area near the restroom where Ms. Lister eventually slips and falls. (*See id.*; Lister Dep. at 37:36:19-37:11.)

At approximately 11:36 p.m., the video depicts a security guard, who was identified through discovery as Kyle Crandall, walking down the corridor adjacent to Hyatt's lobby and the area where the woman vomited. (*See* Video; *see generally* 10/17/19 Skinner Decl. ¶ 6, Ex. 5 ("Crandall Dep.").) Mr. Crandall continues past the area of contamination and appears to look down at the ground near the end of the hallway. (*See* Video.) The video depicts Mr. Crandall walking back through the area near the vomit again at approximately 11:41 p.m. (*See id.*)

Just before 11:55 p.m., the video depicts Ms. Lister leaving the 13 Coins Restaurant and walking down the corridor adjacent to Hyatt's lobby toward Hyatt's restrooms. (*See id.*) Ms. Lister testified that she needed to use the restroom and chose to use the restroom near Hyatt's lobby because she knew where it was located. (Lister Dep. at 31:7-32:16.) Just after 11:55 p.m., the video depicts Ms. Lister slipping on Hyatt's tile flooring where one of the two women at the beginning of the video appeared to vomit. (*See* Video.) Ms. Lister did not see the vomit on the tile flooring prior to her fall. (Lister Dep. at 44:1-5.) Prior to her fall, she was looking up for the restroom sign. (*Id.* at 39:20-40:6.) She only realized that there was vomit on the floor after she fell. (*Id.* at 43:15-25.) Approximately 30 minutes passed between what appears to be the vomiting incident on the video and Ms. Lister's slip and fall. (*See* Video.)

At approximately 11:59 p.m., a few minutes after Ms. Lister's fall, the video depicts Mr. Crandall walking down the corridor adjacent to Hyatt's lobby a third time.

(*See id.*)  Again, he appears to look down at the ground in the hallway.  (*See id.*)  Mr. Crandall testifies that he saw the vomit on the floor outside the restroom and reported it "[a] little before midnight."  (Crandall Dep. at 10:20-25.)  In his subsequent incident report, Mr. Crandall noted that, as he was "walking near the level one bathroom," he "walked through a puddle of vomit" and "immediately" reported the spill.  (Crandall Dep., Ex. 1 (attaching Incident Report).)  Mr. Crandall testified that "after watching the video," he believes that he did not see the vomit until after Ms. Lister slipped and fell. (*Id.* at 24:1-25.)  He testified that he would have called his dispatch or the "central communications center" on his radio, reported the spill, and asked someone to come and clean it up.  (*Id.* at 12:2-8; 11:20-13:18.)  Mr. Crandall testified that his dispatch would have called Hyatt's front desk to report the problem.  (*Id.*)

Following her fall, Ms. Lister returned to the 13 Coins Restaurant.  (*See* Video.) While she was at 13 Coins, Mr. Crandall talked with her and "took a report" of her fall. (Crandell Dep. at 17:15-19:12; 25:13-19; & Ex. 1.)  Mr. Crandall told Ms. Lister that he wanted to call an aid car for her, but she declined.  (*Id.* at 18:7-25.)

Mr. Crandall works as a security guard for Kemper Freeman Properties ("Kemper").  (*Id.* at 6:7-17.)  Alex Dantes, who was Hyatt's Director of Operations at the time of Ms. Lister's accident,[4] testified that Kemper "[p]rovided security, filled out incident reports, reviewed cameras," and performed "general security" for Hyatt.

---

[4] (*See* 2d Plf. PSJM at 6.)  Hyatt does not dispute that Mr. Dantes was the Director of Operations at the time of Ms. Lister's accident.  (*See* 2d Def. Resp. PSJ at 8 (describing Mr. Dantes as Hyatt's "former Director of Operations"); Def. MTE at 11 (describing Mr. Dantes as Hyatt's "former manager").)

(11/1/19 Graham Decl. ¶ 5, Ex. 4 ("Dantes Dep.")[5] at 22:5-8.)  He also testified that if a Kemper security guard "walked by and saw something on the floor," Hyatt expected the security guard to notify Hyatt so that a Hyatt employee could clean it up.  (*Id.* at 22:20-23:1.)  Mr. Dantes also testified that one of the duties of a Kemper security guard is to take incident reports for accidents that happen at Hyatt's facility.  (*Id.* at 35:13-20 ("That's what we hire [Kemper] for is to provide security and document things of significance for the hotel.").)[6]

On the night of Ms. Lister's fall, Hyatt employees Roxanne Taggart-Hugo and Jaeson Bloom were working at the front desk.  (10/17/19 Skinner Decl. ¶ 3, Ex. 2 ("Clark Dep.")[7] at 56:16-21; *id.* ¶ 4, Ex. 3 ("Taggart-Hugo Dep.") at 32:19-33:15; *id.* ¶ 5, Ex. 4 ("Bloom Dep.") at 5:25-64, 6:12-22.)  Hyatt insists no one reported the spill until Ms. Lister's fall.  (*See* Def. MSJ at 4 ("[Ms. Taggart-Hugo] does not recall anyone reporting the presence of a spill near the restrooms until <u>after</u> [Ms. Lister's] fall.").)  However, as

---

[5] Portions of Mr. Dantes's deposition appear in other places on the court's docket.  (*See, e.g.*, 10/17/19 Graham Decl. ¶ 5, Ex. C; 10/17/19 Graham Decl. ¶ 5, Ex. C.)  Irrespective of where Mr. Dantes's deposition is found on the docket, the court will cite to this deposition as "Dantes Dep."

[6] Without reference to any evidence, Hyatt asserts that Mr. Crandall was "not an . . . agent of the Hyatt."  (Def. MSJ at 5, n.1.)  The statement of a lawyer in a brief is not "evidence" and the court will not treat it as such when considering summary judgment. *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 (9th Cir. 2002) ("[T]he arguments and statements of counsel 'are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment.'") (quoting *Smith v. Mack Trucks*, 505 F.2d 1248, 1249 (9th Cir.1974) (per curiam)).

[7] Portions of Mr. Clark's deposition appear in other places on the court's docket.  (*See, e.g.*, 11/1/19 Graham Decl. ¶ 6, Ex. 5.)  Irrespective of where Mr. Clark's deposition is found on the docket, the court will cite to this deposition as "Clark Dep."

the court has previously noted, Ms. Taggart-Hugo's deposition testimony is not definitive

and does not necessarily support that conclusion. (*See* 10/15/19 Order (Dkt. # 29) at 2-3.)

Ms. Taggart-Hugo testified as follows:

> Q: Did anybody tell you about the spill on the floor of the bathroom?
> A: I don't remember being reported the spill. But once I looked at my emails, it was – I had written that the 13 Coins hostess had informed me.
> Q: Okay. Do you know what time that was?
> A: I didn't write in the email what time it was. Again, I would have to speculate exactly what I wrote down. But, you know, in the following email chains, I said before midnight.
> Q: Do you know when Kathryn fell, what time?
> A: I would have to speculate . . . exactly what time, but I wrote around midnight, I think I wrote 12:05ish.
> Q: Do you know where you got that time from?
> A: Looking at the time on the computer and writing it down on a note.
> Q: Do you know whether that the time would have been when you learned about from the person from 13 Coins?
> A: I don't remember.
> Q: Do you know what time Kathryn fell?
> A: No.

(Hugo-Taggart Dep. at 30:22-31:19.) Mr. Bloom has no recollection of or knowledge

concerning any of the events surrounding Ms. Lister's June 15, 2018, fall.[8] (Bloom Dep.

at 17:23-20:24.)

Hyatt's Federal Rule of Civil Procedure 30(b)(6) deponent, Sean Clark, testified

that both Hyatt's lobby and the restrooms adjacent to the lobby are open to the public.

(Clark Dep. at 42:4-6; 43:1-3.) He testified that, in addition to 13 Coins, other businesses

---

[8] While testifying on behalf of Hyatt as its Federal Rule of Civil Procedure 30(b)(6) deponent, Sean Clark identified Mr. Bloom as one of the individuals who walked past the vomit on Hyatt's tile flooring near the lobby restrooms shortly before Ms. Lister slipped and fell. (Clark Dep. at 13:24-14:23.) However, Mr. Bloom has no recollection of any pertinent events surrounding Ms. Lister's fall. (*See* 10/17/19 Skinner Decl. ¶ 5, Ex. 4 ("Bloom Dep.") at 17:23-18:18, 19:12-20:12, 31:21-24.)

also operate adjacent to Hyatt's lobby area, including Fonte Coffee and Eques, which is Hyatt's restaurant on the second floor. (*Id.* at 41:9-15.) He testified that he is aware that people who are not staying overnight use Hyatt's restrooms and that no one is or ever has been excluded from using Hyatt's restrooms unless they have been formally trespassed. (*Id.* at 42:10-21.) He testified that there are no signs anywhere on the premises indicating that only Hyatt's guests may use Hyatt's restrooms. (*Id.* at 42:22-25.)

Mr. Dantes also testified that people are never excluded from using the bathrooms in Hyatt's lobby and that anyone can use the bathrooms unless they have been "trespassed" or are "visibly not doing any kind of business within the hotel." (Dantes Dep. at 45:10-16.) Mr. Dantes testified that Hyatt permitted guests of the 13 Coins restaurant to use Hyatt's restrooms, and he personally saw 13 Coins' guests leave the bar and use Hyatt's restrooms. (*Id.* at 49:7-18.) Mr. Dantes also testified that at the time of Ms. Lister's accident, 13 Coins restaurant provided 24-hour food service and overnight room service for Hyatt's guests. (*Id.* at 45:17-24.) Finally, he testified that Hyatt received a portion of the proceeds from these 13 Coins' food and room service sales. (*Id.* at 45:11-48:21.)

**B.    Procedural Background**

On or about May 31, 2018, Ms. Lister filed a lawsuit against Hyatt in King County Superior Court. (*See* Compl.) On June 28, 2018, Hyatt removed Ms. Lister's lawsuit to federal court. (*See* Not. of Removal (Dkt. # 1).) The court issued a scheduling order setting July 31, 2019, as the deadline for expert disclosures and September 30, 2019, as the discovery cut-off. (Sched. Order (Dkt. # 19) at 1.) On July 11, 2019, at the request of

both parties, the court extended the deadline for expert witness disclosures from July 31, 2019, to August 30, 2019. (7/11/19 Order (Dkt. # 21) at 2.) Rebuttal expert disclosures were due on September 29, 2019—30 days after the expert witness disclosure deadline. *See* Fed. R. Civ. P. 26(a)(2)(C)(ii) (". . . [T]he disclosure must be made . . . if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(20(B) or (C) [which relate to expert witness disclosures], within 30 days after the other party's disclosure.").

On September 26, 2018, as a part of her Federal Rule of Civil Procedure 26(a)(1) initial disclosures, Ms. Lister identified Theodore Becker, PhD, as a potential expert witness. (10/29/19 Skinner Decl. (Dkt. # 41) ¶ 3, Ex. 2 at 4-5.) On November 5, 2018, Ms. Lister served her responses to Hyatt's first written discovery requests. (*See id.* ¶ 4.) With her responses, she produced Dr. Becker's curriculum vitae ("CV"), including his publication list, and his expert report. (*See id.* ¶ 4, Ex. 3.)

On August 1, 2019, Ms. Lister served her first supplemental discovery responses and produced (1) an expert report and a CV for Joellen Gill, and (2) an expert report and a CV, which included a list of publications, for James Pritchett, MD. (*Id.* ¶ 5, Ex. 4 at 20, 31-44, 53-84.)

In both her initial disclosures and subsequent discovery responses, Ms. Lister identified several treating medical providers as witnesses who may have knowledge concerning the nature and extent of her injuries, treatment, and causation, including: (1) Cory Heidleberger, MD; (2) Khoa Nguyen, MD; (3) Thomas D. Chi, MD; (4) Elliott A. Feldman, PT; (5) Caitlin M. Marra, PT; (6) Lucy Hwang, MD; and (7) Patricia G.

Read-Williams, MD.  (*Id.* ¶ 3, Ex. 2 at 2-3; 7/29/19 Skinner Decl. (Dkt. # 25) ¶ 3, Ex. 2 at 9-10.)  She did not, however, expressly designate her treating health care providers as "expert" witnesses; nor did she provide a summary of the opinions to which her treating medical providers were expected to testify.[9]  (*See* 7/29/19 Skinner Decl. ¶ 3, Ex. 2 at 9-10.)  On September 30, 2019, one day after the rebuttal expert deadline, Ms. Lister produced her second supplemental discovery responses, which included supplemental data and disclosures regarding Dr. Hwang.  (10/29/19 Skinner Decl. ¶ 6, Ex. 5 at 9-10.)

On October 29, 2019, Hyatt filed a motion to exclude Ms. Lister's expert witnesses.  (*See* Def. MTE.)  On October 31, 2019, Ms. Lister's counsel produced (1) Dr. Pritchett's statement of compensation; (2) Dr. Becker's testimony list and statement of compensation; and (3) Ms. Gill's testimony list and a compensation schedule.  (11/8/19 Maxwell Decl. (Dkt. # 50) ¶ 3, Exs. A, B.)

Hyatt never sought to depose any of Ms. Lister's experts or any of her treating health care providers.  (*See* Plf. Resp. MTE (Dkt. # 49) at 2 ("Nor did [Hyatt] depose Dr. Becker."), 3 ("[Hyatt] never sought to depose Ms. Gill."), 4 ("[Hyatt] . . . could have deposed Dr. Pritchett."); 7 ("[Hyatt] never saw the need to depose a single health care

---

[9] For example, Ms. Lister states that "Doctors Heidelberger and Nguyen provided treatment" to her "and are believed to have knowledge regarding the nature of [her] injuries." (*See* 7/29/19 Skinner Decl. ¶ 3, Ex. 2 at 9.)  She states that "Dr. Chi is the orthopedic surgeon who repaired [her] left hip fracture," and "he is believed to have knowledge regarding the nature and causation of [her] injury as well as her medical treatment and prognosis." (*Id.*)  She relates that "Dr. Hwang is [her] primary care physician" and "is believed to have knowledge regarding the nature and extent of [her] injuries and their impact on [her] activities of daily living." (*Id.* at 10.)  Finally, Ms. Lister states that "Dr. Read-Williams provided treatment to [her] after she suffered a fall caused by limited mobility in her left hip," and Dr. Read-Williams "is believed to have knowledge regarding the nature and extent of [her] injuries and their impact on [her] activities of daily living." (*Id.*)

provider of [Ms. Lister].”); *see also* Def. Reply MTE (Dkt. # 54) at 2 (acknowledging that Hyatt “did not request to depose [Ms. Lister’s] experts”).)

In her response to Hyatt’s motion to exclude expert testimony, Ms. Lister states that Joellen Gill, a human factors expert, Joel Pritchett, MD, an orthopedic surgeon, and Theodore Becker, PhD, who measures Ms. Lister’s physical capacities, are the only experts who she has retained for purposes of litigation. (Plf. Resp. SJ at 1 n.1.) She also states that she does not intend to present expert testimony from Bryan Jorgensen, Rachel Steilberg, MS, CRC, CLCP, Jerry Hatchell, or David Spanier, MD. (*Id.*) Thus, the court limits its consideration of Hyatt’s motion to exclude expert testimony to the testimony of Ms. Gill, Dr. Pritchett, Dr. Becker, and Ms. Lister’s treating health care providers, and denies as moot Hyatt’s motion concerning Mr. Jorgensen, Ms. Steilberg, Mr. Hatchett, and Dr. Spanier.

The parties also filed several motions for summary judgment or partial summary judgment. On July 11, 2019, Ms. Lister filed a motion for summary judgment concerning several of Hyatt’s affirmative defenses. (*See* 1st Plf. PSJM.) On October 15, 2019, the court entered a ruling on Ms. Lister’s motion which denied the motion in part. (*See* 10/15/19 Order.) Pursuant to Federal Rule of Civil Procedure 56(d), the court deferred ruling on Ms. Lister’s motion for summary judgment on Hyatt’s fifth, seventh, ninth, and twelfth affirmative defenses. (*Id.* at 10-15, 19.) Following the close of discovery, Hyatt filed a supplemental response to Ms. Lister’s motion concerning these affirmative defenses and Ms. Lister filed a supplemental reply. (*See* Def. Supp. Resp. PSJ; Plf. Supp.

Reply PSJ (Dkt. # 39).)  The court is now ready to issue its final summary judgment ruling on Hyatt's fifth, seventh, ninth, and twelfth affirmative defenses.

In addition, on October 17, 2019, Ms. Lister filed a second motion for partial summary judgment.  (*See* 2d Plf. PSJM.)  In her second motion, Ms. Lister asks the court to conclude as a matter of law that she was either a business invitee or public invitee when she slipped and fell in Hyatt's lobby on June 15, 2017.  (*See generally id.*)  On the same day, Hyatt filed a motion for summary judgment asking the court to conclude as a matter of law that Ms. Lister was a licensee at the time of her fall and to grant summary judgment to Hyatt on grounds that it did not breach a duty to Ms. Lister.[10]  (*See* Def. MSJ at 9-14.)  The court now considers the parties' pending motions

### III.      ANALYSIS

The court addresses Hyatt's motion to exclude expert testimony first.  (*See* Def. MTE.)  The court then addresses the remainder Ms. Lister's first motion for partial summary judgment on Hyatt's affirmative defenses.  (*See* 1st Plf. PSJM; *see also* 10/15/19 Order.)  Finally, the court will address Ms. Lister's second motion for partial summary judgment on her status as either a business or public invitee (*see* 2d Plf. PSJM) and Hyatt's motion for summary judgment (*see* Def. MSJ.)

//

//

---

[10] Hyatt also asks the court to grant summary judgment to Hyatt on any loss of earnings damages claimed by Ms. Lister.  (*See id.* at 14-15.)  However, in her response, Ms. Lister states that she "does not intend to present a claim for lost wages, past or future."  (Plf. Resp. SJ at 3 n.1.)  Accordingly, the court denies as moot this portion of Hyatt's summary judgment motion and does not address it further.

## A. Hyatt's Motion to Exclude Expert Testimony

Hyatt advances several arguments for excluding the testimony of Ms. Lister's expert witnesses and any expert testimony from her treating medical providers. (*See generally* Def. MTE.)  First, Hyatt argues that Ms. Lister failed to abide by Federal Rule of Civil Procedure 26(a)(2)(B)'s disclosure requirements for the expert witnesses she retained for purposes of testifying at trial.  (*See id.* at 3-6 (relying upon Fed. R. Civ. P. 26(a)(2)(B)).)  Second, Hyatt argues that Ms. Lister failed to abide by Rule 26(a)(2)(C)'s disclosure requirements for expert testimony from her treating medical providers.  (*See id.* at 6-7 (relying upon Fed. R. Civ. P. 26(a)(2)(B)).)  Third, Hyatt asserts that the supplemental materials Ms. Lister provided regarding Dr. Hwang are improper because the materials do not relate to rebuttal opinions pursuant to Rule 26(a)(2)(D)(ii).  (*See id.* at 7 (relying upon Fed. R. Civ. P. 26(a)(2)(D)(ii)).)  Finally, Hyatt argues that the opinions of Dr. Becker and Ms. Gill should be excluded as either not relevant or not reliable under Federal Rule of Evidence 702.[11]  (*See id.* at 7-12 (relying upon Fed. R. Evid. 702).)  Ms. Lister opposes Hyatt's motion to exclude.  (*See generally* Plf. Resp. MTE.)  The court now considers Hyatt's motion.

---

[11] In its reply brief, Hyatt also complains that Ms. Lister's response to Hyatt's motion to exclude her expert witnesses is overlong at 18 pages.  (Def. Reply MTE at 2.)  Hyatt argues that Ms. Lister should have limited her response to 12 pages and asks the court to decline to consider the content to Ms. Lister's response after page 12.  (*Id.* (citing Local Rules W.D. Wash. LCR 7(d)(3), 7(e)(4), 7(e)(5)).)  Whether the court considers material that falls outside of the page limits is within the court's discretion.  *See* Local Rules W.D. Wash. LCR 7(e)(6) ("The court may refuse to consider any text, including footnotes, which is not included within the page limits.").  Here, the court declines to disregard the last six pages of Ms. Lister's responsive memorandum.  Nevertheless, the court cautions counsel that any further violations of the Local Rules may result in the imposition of sanctions.

1    1.  <u>The Adequacy of Ms. Lister's Expert Disclosures under Rule 26(a)(2)(B)</u>

2    Rule 26(a)(2)(B) provides, in relevant part, that the disclosure of an expert witness

3    "must be accompanied by a written report—prepared and signed by the witness."  Fed. R.

4    Civ. P. 26(a)(2)(B).  The rule also describes in detail the written report's required

5    contents, which include:

6        (i) a complete statement of all opinions the witness will express and the basis
         and reasons for them;
7        (ii) the facts or data considered by the witness in forming them;
         (iii) any exhibits that will be used to summarize or support them;
8        (iv) the witness's qualifications, including a list of all publications authored
         in the previous 10 years;
9        (v) a list of all other cases in which, during the previous 4 years, the witness
         testified as an expert at trial or by deposition; and
10       (vi) a statement of the compensation to be paid for the study and testimony
         in the case.

11   Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).  Rule 37(c)(1) provides that "[i]f a party fails to

12   provide information or identify a witness as required by Rule 26(a) or (e), the party is not

13   allowed to use that information or witness to supply evidence on a motion, at a hearing,

14   or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P.

15   37.  "The determination of whether a failure to disclose is justified or harmless is

16   entrusted to the broad discretion of the district court."  *S.F. Bay Area Rapid Transit Dist.*

17   *v. Spencer*, No. 04-04632-SI, 2007 WL 421336, at *4 (N.D. Cal. Feb. 5, 2007); *Auto.*

18   *Indus. Pension Tr. Fund v. Tractor Equip. Sales, Inc.*, 73 F. Supp. 3d 1173, 1181-82

19   (N.D. Cal. 2014), *aff'd*, 672 F. App'x 685 (9th Cir. 2016).

20   Hyatt argues that Ms. Lister failed to timely and fully comply with all the

21   disclosure requirements of Rule 26(a)(2)(B)(i)-(vi), and therefore the court should

22

exclude the testimony of the following expert witnesses:  Ms. Gill, Dr. Pritchett, and Dr. Becker.  (Def. MTE at 3-6.)  Ms. Lister's counsel acknowledges that certain aspects of her expert witness disclosures did not comply with Rule 26(a)(2)(B)(i)-(vi), but argues that any error was harmless and, therefore, does not warrant the court's imposition of sanctions.  (Plf. Resp. MTE at 7-8.)  The court agrees with Ms. Lister.  As discussed below, although her expert witness disclosures were haphazard and incomplete, she provided enough information to Hyatt early enough in the discovery period that any deficiencies in her disclosures were harmless.

Ms. Lister identified Dr. Becker as a potential expert witness on September 26, 2018.  (10/29/19 Skinner Decl. ¶ 3, Ex. 2 at 4-5.)  On November 5, 2018, Ms. Lister produced his CV, publication list, and his expert report.   (*See id.* ¶ 4, Ex. 3.)  Thus, Hyatt had this information more than nine months before the August 30, 2019, expert witness disclosure deadline.  (*See* 7/11/19 Order at 2 (extending this deadline from July 31, 2019, to August 30, 2019).)  Nevertheless, Hyatt complains that Ms. Lister did not produce a list of his previous testimony or a statement of compensation.  (Def. MTE at 5); *see also* Fed. R. Civ. P. 26(a)(2)(B)(v), (vi).  Hyatt also argues that Dr. Becker's report "does not appear . . . [to] contain[] a full and complete statement of Dr. Becker's opinions."  (Def. MTE at 5.)

On August 1, 2019, 29 days prior to the expert disclosure deadline, Ms. Lister identified Ms. Gill as an expert witness and produced Ms. Gills' expert report and CV.  (10/29/19 Skinner Decl. ¶ 5, Ex. 4; *see also* 7/11/19 Order at 2.)  Yet, Hyatt complains that the disclosure does not contain a list of Ms. Gill's previous testimony, a statement of

compensation, or a list of the exhibits she intends to use at trial. (*See* Def. MTE at 6); *see also* Fed. R. Civ. P. 26(a)(2)(B)(iii), (v), (vi). Hyatt also states that Ms. Gill's report contains an inadequate statement of the "facts and data" upon which she relied, because the report only states that she "reviewed the initial file materials" provided by Ms. Lister. (*See* Def. MTE at 6 (citing 10/29/19 Skinner Decl. ¶ 5, Ex. 4 at 32)); *see also* Fed. R. Civ. P. 26(a)(2)(B)(ii).

On August 1, 2019, Ms. Lister identified Dr. Pritchett as an expert witness and produced his report and CV. (10/29/19 Skinner Decl. ¶ 5, Ex. 4.) Hyatt argues that the disclosure is insufficient because it lacks a statement of compensation, a statement of the "facts and data" upon which he relies, and a list of the exhibits he intends to use at trial. (Def. MTE at 6); *see also* Fed. R. Civ. P. 26(a)(2)(B)(ii), (iii), (vi). Hyatt also complains that "it is unclear whether Dr. Pritchett examined [Ms. Lister]." (Def. MTE at 6.) Hyatt also asserts that Dr. Pritchett's report does not adequately explain his opinions or their bases. (*Id.*)

Hyatt filed its motion to exclude Ms. Lister's expert witnesses on October 29, 2019. (*See* Def. MTE.) As noted above, on October 31, 2019, Ms. Lister's counsel produced (1) Dr. Pritchett's statement of compensation; (2) Dr. Becker's testimony list and statement of compensation; and (3) Ms. Gill's testimony list and a compensation schedule. (11/8/19 Maxwell Decl. ¶ 3, Exs. A, B.)

//

//

//

Nowhere in its motion does Hyatt explain how the asserted failings in Ms. Lister's expert disclosures caused Hyatt any harm.[12] (*See generally* Def. MTE.) Indeed, Hyatt never sought to depose even one of Ms. Lister's expert witnesses. (*See* Def. Reply MTE at 2.) Further, as Ms. Lister also points out, if Hyatt believed Ms. Lister's expert disclosures were inadequate, Hyatt could have inquired into the statements it believed were inadequate within the discovery period. (*See* Plf. Resp. MTE at 9 ("[Hyatt never asked [Ms. Lister] to provide [the missing materials] . . . .").) Yet, Hyatt did not so inquire—opting instead to bring the present motion after the discovery period expired. Because Hyatt never inquired further during the discovery period or sought to depose even one of these experts, the court finds that Ms. Lister's failure to strictly comply with the disclosure requirements of Rule 26(a)(2)(B) was harmless. *See, e.g.*, *Davis v. Davison Hotel Co., LLC*, No. CV 12–6327 CAS (AJWx), 2013 WL 3337669, at *2-3 (C.D. Cal. 2013) (declining to exclude witnesses who were not disclosed in Rule 26 initial disclosures because there was no "showing of surprise, prejudice, or other unfairness"); *Auto Indus. Pension Trust Fund*, 73 F.Supp.3d at 1183 (holding that a failure to disclose was harmless when the other party "easily could have" inquired more into certain statements); *Perez v. Auto Tech. Co.*, No. CV 13-06728 MMM (VBKx), 2015

---

[12] Hyatt argues in its reply memorandum that it was harmed because "deposing an expert prior to the expert disclosure would be an unwise use of resources." (Def. Reply MTE at 3.) Yet, Hyatt could have deposed any of the witnesses during the month between the August 30, 2019, expert disclosure deadline and the September 30, 2019, discovery cutoff. (*See* Sched. Order at 1; 7/11/19 Order at 2.) In any event, the court is unconvinced by Hyatt's assertions of harm and further declines to consider an argument raised for the first in reply when Ms. Lister has no opportunity to respond. *See United States v. Wright*, 215 F.3d 1020, 1030 n.3 (9th Cir. 2000) (declining to consider arguments raised for the first time in a reply brief).

WL 12745804, *4 (C.D. Cal. 2015) (holding failure to comply with Rule 26 harmless when the other party could not "credibly assert it was unaware" of an expert's expected testimony); *Estate of Gonzalez v. Hickman*, No. ED CV 05-00660 MMM (RCx), 2007 WL 3237635, at *6 (C.D. Cal. 2007) (finding that "plaintiffs' belated disclosure of [expert] reports was harmless" because "their substance was available to defendants" at a much earlier date); *Dhaliwal v. Singh*, No. 1:13-cv-00484-LJO-SKO, 2014 WL 2957310, at *7 (E.D. Cal. 2014) (holding that a "technical violation of Rule 26" was harmless when plaintiff was not diligent in seeking to take the deposition of a witness). Accordingly, the court denies Hyatt's motion to exclude Ms. Lister's expert witnesses on this basis.

2. The Adequacy of Ms. Lister's Expert Disclosures under Rule 26(a)(2)(C)

Hyatt argues that Ms. Lister failed to comply with the strictures of Rule 26(a)(2)(C) for disclosing any opinion testimony she may offer from her treating medical providers. (Def. MTE at 6-7.) Although these witnesses are not required to produce reports, Hyatt argues that under Rule 26(a)(2)(C), Ms. Lister is required to disclose (1) "the subject matter on which the witness is expected to present evidence under Federal Rules of Evidence 702, 703, or 705," and (2) "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). As noted above, although Ms. Lister disclosed the subject matters on which her disclosed treating medical providers are expected to present evidence, she did not provide a summary of the opinions these witnesses are expected to offer. (*See* 7/29/19 Skinner Decl. ¶ 3, Ex. 2 at 9-10.) Thus, Hyatt argues that the court should exclude the testimony of these witnesses as experts "on causation, the reasonableness, necessity, and relatedness of [Ms. Lister's]

medical treatment, and on recommendations for future care or treatment." (Def. MTE at 7.)

Rule 26(a)(2)(A) requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). As noted above, Ms. Lister failed to expressly identify her treating medical providers as expert witnesses. (*See* 7/29/19 Skinner Decl. ¶ 3, Ex. 2 at 9-10.) Instead, Ms. Lister disclosed these witnesses as percipient fact witnesses with knowledge of Ms. Lister's injuries, treatment, and prognosis. (*See id.*); *see also* Fed. R. Evid. 701(a) ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is . . . rationally based on the witness's perception."). Although "other circuits have held that treating physicians are experts that must be properly disclosed under . . . Rule . . . 26, . . . [the Ninth Circuit] has not." *Hoffman v. Lee*, 474 F. App'x 503, 505 (9th Cir. 2012) (internal citation omitted). So long as these witnesses testify solely as percipient witnesses, Ms. Lister is not required to disclose her treating medical providers as expert witnesses. *See id.* ("We hold that [the doctor] testified only as a percipient witness and thus need not have been disclosed as an expert."). Further, a district court properly admits the testimony of a party's treating medical provider, even if the party has not disclosed the provider as an expert witness, so long as each of the treating medical provider's opinions "addresses his [or her] thoughts on particular actions that he [or she] took in his [or her] treatment of [the party]." *See id.* Thus, consistent with *Hoffman*, the court will permit Ms. Lister's disclosed treating medical providers to testify as percipient witnesses about their diagnosis and treatment of

Ms. Lister and to any opinions formed during the course of treatment. *See Haro v. GGP-Tucson Mall LLC*, No. CV-17-00285-TUC-JAS, 2019 WL 369269, at *4 (D. Ariz. Jan. 30, 2019) (considering treating physicians as lay witnesses and allowing them to "testify regarding their diagnosis and treatment" of the plaintiff); *Walker v. Spina*, No. CIV 17-0991 JB/SCY, 2019 WL 145626, at *19 (D.N.M. Jan. 9, 2019) ("A treating physician does not need to be certified as an expert witness and may testify as a lay witness 'if he or she testifies about observations based on personal knowledge, including the treatment of the party.'") (quoting *Guerrero v. Meadows*, 646 F. App'x 597, 602 (10th Cir. 2016)).

However, a physician's testimony as a percipient witness does not extend to the issue of causation. The Ninth Circuit has held that "a physician's assessment of the cause of an injury is expert testimony." *United States v. Urena*, 659 F.3d 903, 908 (9th Cir. 2011) (citing *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) ("Her diagnosis of the injury itself . . . would be permissible lay testimony, but her statement about the cause of the injury was, as she admitted, a 'hypothesis.' And the ability to answer hypothetical questions is the essential difference between expert and lay witnesses." (internal quotation and alteration omitted)); *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) (holding that, where the cause of an injury would not be obvious to a lay juror, expert testimony is required)).

In sum, the court grants in part and denies in part Hyatt's motion to exclude opinion testimony from Ms. Lister's disclosed treating medical providers. Although these witnesses may not opine on matters unrelated to their diagnosis and treatment of

Ms. Lister, including causation, these witnesses may testify as percipient witnesses concerning their diagnosis and treatment of Ms. Lister and any opinions formed during that course of treatment.

### 3. Supplemental Rebuttal Expert Disclosures

Hyatt argues that Ms. Lister's disclosure of supplemental materials concerning Dr. Hwang is inadequate because the supplemental materials do not constitute genuine rebuttal opinions. (MTE at 7.) Further, Hyatt argues that the supplemental disclosures were untimely because rebuttal expert witness disclosures were due on September 29, 2019, but Ms. Lister did not produce Dr. Hwang's supplemental disclosure until September 30, 2019. (*Id.*)

In her initial discovery responses, Ms. Lister disclosed that Dr. Hwang is her primary care physician with "knowledge regarding the nature and extent of [Ms. Lister's] injuries and their impact on plaintiff's activities of daily living." (10/29/19 Skinner Decl. ¶ 6, Ex. 5 at 8.) On September 30, 2019, Ms. Lister supplemented her response to state as follows:

> Dr. Hwang did not have any concerns about Plaintiff being at risk of falling prior to the surgery on June 16, 2017, that she underwent as a result of the hip fracture she sustained in her fall at the Hyatt on June 15th, 2017. Prior to this fall, and subsequent surgery, Dr. Hwang did not see that Plaintiff had problems with her gait that presented an increased risk of falls or problems walking. Dr. Hwang does not have any concerns that Plaintiff has a neurological disorder. Dr. Hwang recently saw Plaintiff and Dr. Hwang is now concerned about Plaintiff's risk of falls since Plaintiff reports that she has fallen four times since her surgery in June of 2017.

(*Id.* ¶ 6, Ex. 5 at 9-10.)

//

The court agrees with Hyatt that Ms. Lister's supplemental discovery response concerning Dr. Hwang does not describe rebuttal expert opinions. However, consistent with the ruling above, Dr. Hwang is permitted to testify as a percipient witness about her diagnosis and treatment of Ms. Lister and to any opinions formed during the course of treatment. *See supra* § III.A.2. Ms. Lister's supplemental disclosure concerning Dr. Hwang is consistent with those parameters. Further, the supplemental disclosure was timely because it occurred on September 30, 2019, which was the discovery cutoff. (*See* Sched. Order at 1.) Finally, because Hyatt never sought to depose Dr. Hwang, or any of Ms. Lister's other medical providers or medical experts, the court is not persuaded that Hyatt suffered any prejudice by the production of this additional disclosure on the last day of the discovery period. Accordingly, the court denies Hyatt's motion to exclude Dr. Hwang's testimony. However, Dr. Hwang must conform her testimony to the parameters of the court's ruling concerning Ms. Lister's treating medical providers, testify strictly as a percipient witness with knowledge concerning the diagnosis and treatment of Ms. Lister, and limit her opinion testimony to those opinions formed during her treatment of Ms. Lister. *See supra* § III.A.2.

    4. <u>The Relevance and Reliability of Dr. Becker's and Ms. Gill's Testimony</u>

"Before admitting expert testimony into evidence, the district court must perform a 'gatekeeping role' of ensuring that the testimony is both 'relevant' and 'reliable' under

*//*

*//*

*//*

Federal Rule of Evidence 702."[13]  *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (citing *Daubert v. Merrell Dow Pharm.*, 509 U.S. 597 (1993)). "Relevancy simply requires that 'the evidence logically advance a material aspect of the party's case.'"  *Id.* (citing *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (citation and internal alterations omitted)).  Reliability "requires that the expert's testimony have 'a reliable basis in the knowledge and experience of the relevant discipline.'"  *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)). The test for reliability "'is not the correctness of the expert's conclusions but the soundness of his methodology,' and when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony."  *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014) (quoting *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010)).  The reliability analysis is "a malleable one tied to the facts of each case," and "district courts are vested with 'broad latitude' to 'decide how to test an expert's reliability' and 'whether or not an expert's relevant testimony is reliable.'"  *Murray v. S. Route Mar. SA*, 870 F.3d 915, 922-23 (9th Cir. 2017) (quoting *Kumho Tire*, 526 U.S. at

---

[13] Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

152-53).  Although *Daubert*, 509 U.S. at 592-94, identifies several factors that may be used for evaluating the reliability of an expert—whether the scientific theory or technique has been tested, peer reviewed, identified as having a particular rate of error, and generally accepted in the scientific community—district courts are not required to consider all (or even any) of these factors, nor are they required to hold a "*Daubert* hearing." *Barabin*, 740 F.3d at 463-64.

      *a.  Dr. Becker*

      Hyatt challenges Dr. Becker's expert testimony as lacking relevance.  (*See* MTE at 8-9.)  Hyatt argues that "Dr. Becker's report and opinions relate to [Ms. Lister's] possible loss of earnings claim."  (*Id.* at 8 (citing 10/29/19 Skinner Decl. ¶ 4, Ex. 3 at 34-35).)  Hyatt asserts that Ms. Lister "does not have a viable loss of earnings claim" and so Dr. Becker's opinions are irrelevant.  (*Id.* at 9.)  Ms. Lister concedes that she is not asserting a loss of earnings claim but contends that Dr. Becker's opinion testimony is relevant to her "physical limitations" and how those limitations "affect her activities of daily living." (MTE Resp. at 12.)  The court agrees that Dr. Becker's opinions concerning Ms. Lister's physical limitations are relevant to Ms. Lister's general damages claim.  In reply, Hyatt argues that "Dr. Becker's report . . . does not contain opinions as to how [Ms. Lister's] limitations impact her quality of life."  (Def. Reply MTE at 5.)  The court disagrees.  Dr. Becker's report consists of the results of his testing of Ms. Lister's physical abilities and limitations.  (*See* 10/29/19 Skinner Decl. ¶ 4, Ex. 3.)  The report also contains his opinions concerning her abilities and limitations based on those test results.  (*See, e.g.*, *id.* at 35-36 (detailing Dr. Becker's "[c]onclusions" and "[r]ecommendations").)  Thus, the

court denies Hyatt's motion to exclude Dr. Becker's expert testimony based on relevancy. The court, however, will limit Dr. Becker's testimony to those opinions contained in his report.

### b. Ms. Gill

Hyatt challenges Ms. Gill's expert testimony on the ground that it is not reliable. (*See* Def. MTE at 9-12.) Ms. Gill is a human factors expert. (10/29/19 Skinner Decl. ¶ 7, Ex. 6 ("Gill Decl.") ¶ 2.) She testifies that she has "worked as a research associate, human factors engineering associate and senior engineer on several hundred legal cases as a [h]uman [f]actors expert." (*Id.*) She is Board Certified in Professional Ergonomics and as a Safety Professional. (*Id.*) She is also a certified XL Tribometrist (meaning she is certified to measure slip resistance of a walking surface) and a certified Project Management Professional. (*Id.*) In her expert report, Ms. Gill states that she is "quite familiar with the risk management practices of a wide variety of retailers, commercial enterprises, fast food restaurants, property owners, hospitality enterprises, and the like." (*Id.* ¶ 5, Ex. 4 at 40.) Despite her educational qualifications and extensive experience, Hyatt argues that Ms. Gill is not qualified "to opine on the adequacy of the janitorial and housekeeping practices of a hotel, including the frequency at which a hotel inspects and/or cleans its lobby restrooms near midnight on a Thursday evening." (MTE at 9.) The court, however, is convinced that Ms. Gill is qualified to testify as an expert in these areas. The fact that her experience, including "hospitality enterprises," may be broader than merely encompassing hotels, does not disqualify her. The depth of her experience specifically in the hotel industry may go to the weight of testimony and may be an area

on which Hyatt will want to cross-examine her, but she is nevertheless qualified to testify as to the adequacy of the janitorial and housekeeping practices at issue here. *See Primiano*, 598 F.3d at 564 ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.") (citing *Daubert*, 509 U.S. at 596).

Hyatt also argues that the court should exclude Ms. Gill's opinions concerning Hyatt's risk management program and how it compares to the "Safety by Design" framework. (*See* MTE at 10-11.) Hyatt argues that Ms. Gill does not explain why the "Safety by Design" framework applies to the hotel industry or Hyatt in particular. (*Id.* at 10.) Hyatt also complains that her "approach is one size fits all." (*Id.* at 10.) However, Ms. Gill plainly states that the "Safety by Design" approach is part of a three-level hierarchical process that safety and human factors professionals use when creating a plan to control a known hazard—such as a slip hazard. (10/29/19 Skinner Decl. ¶ 5, Ex. 4 at 40.) The issues that Hyatt raises—whether "Safety by Design" is the appropriate framework for the hotel industry in general or Hyatt in particular—go to the weight of Ms. Gill's testimony and are possible areas for cross-examination, but are not sufficient to warrant exclusion of her testimony. *See Primiano*, 598 F.3d at 564.

Next, Hyatt complains that Ms. Gill's first opinion that the wet flooring was a "functional hidden hazard" is not reliable because she did not inspect the scene of the accident and did not perform coefficient of friction testing at the scene. (*See* MTE at 11.) As explained in her report, Ms. Gill bases her opinion on her review of the surveillance video of the incident and Ms. Taggart-Hugo's deposition testimony. Although the facts

that she did not visit the accident scene or perform on-site testing may be appropriate

areas of inquiry on cross-examination, these facts do not warrant exclusion of Ms. Gill's

testimony. *See Primiano*, 598 F.3d at 564.

Finally, Hyatt argues that the court should exclude Ms. Gill's opinion that "[b]ased

on the information available to date, Ms. Lister's actions and/or inactions were consistent

with foreseeable human behavior." (Def. MTE at 11 (citing 10/29/19 Skinner Decl. ¶ 5,

Ex. 4 at 33); *see also id.* at 42 ("While it may have been 'physically possible' for Ms.

Lister to have detected the unexpected contaminant that induced her slip and fall, the only

relevant question in safety is whether a person could reasonably and foreseeably fail to

have detected it, and not whether the unexpected contaminant was visible if a person was

specifically looking for such an unexpected hazardous condition.").)  Hyatt also seeks to

exclude Ms. Lister's testimony "to the extent" she opines that Ms. Lister bears no fault

for the accident.  (*Id.* at 11-12.)  In the summary of her report, Ms. Gill states:

> In short, Ms. Lister did not commit any errors of omission (i.e., failing to do
> something a reasonable person would have done) or errors of commission
> (i.e., doing something a reasonable person would not have done.)  To fault
> Ms. Lister for her slip and fall is to falsely attribute the failure mode (i.e.,
> incorrectly identify the underlying root cause which results in inappropriate
> corrective action and a continuation of the hazard); this is contrary to basic
> safety and risk management principles.

10/29/19 Skinner Decl. ¶ 5, Ex. 4 at 41-42.)

Expert opinions are not objectionable merely because they embrace an ultimate

issue.  Fed. R. Evid 704(a).  That said, expert witnesses cannot offer opinions as to legal

conclusions, i.e., opinions on ultimate issues of law.  *Hangarter v. Provident Life &*

*Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).  Indeed, "evidence that merely

tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible." *Nationwide Transport Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008). Ms. Gill may not opine that Ms. Lister was not at fault for the accident. After all, who bears fault for the accident at issue and in what proportion is the ultimate issue of law in this case. Nevertheless, as a human factors expert, Ms. Gill may testify to the foreseeability of Ms. Lister's behavior. Such expert testimony does not address an ultimate issue of law as foreseeability is generally an issue of fact. *See Davis v. Progressive Cas. Ins. Co.*, 220 F. App'x 708, 710-11 (9th Cir. Feb. 5, 2007) (holding that the district court did not err by admitting expert testimony concerning the reasonableness of an insurer's claims-handling procedures because the reasonableness of such procedures is generally an issue of fact); *King v. GEICO Indem. Co.*, 712 F. App'x 649, 651 (9th Cir. Nov. 13, 2007) (same); *see also Pearson v. Reynolds Sch. Dist. No. 7*, 998 F. Supp. 2d 1004, 1029 (D. Or. 2014) ("The question of foreseeability is generally an issue of fact . . . ."). Consistent with the foregoing analysis, the court grants in part and denies in part Hyatt's motion to exclude Ms. Gill's expert opinions.

5. Summary

The court grants in part and denies in part Hyatt's motion to exclude expert testimony. The court denies Hyatt's motion to exclude Ms. Lister's expert witnesses on the ground that Ms. Lister failed to timely and fully comply with the disclosure requirements of Rule 26(a)(2)(B)(i)-(vi). The court grants in part and denies in part Hyatt's motion to exclude Ms. Lister's treating medical providers based on Ms. Lister's failure to comply with the strictures of Rule 26(a)(2)(C). Ms. Lister's treating medical

providers may testify as percipient witnesses concerning their diagnosis and treatment of Ms. Lister and any opinions they formed during their course of treatment of her. The court also grants in part and denies in part Hyatt's motion to exclude rebuttal expert testimony of Dr. Hwang. Like Ms. Lister's other treating medical providers, Dr. Hwang may testify as a percipient witness concerning his diagnosis and treatment of Ms. Lister and any opinions he formed during his course of treatment of her. Finally, the court denies Hyatt's motion to exclude the testimony of Dr. Becker as lacking in relevance and grants in part and denies in part Hyatt's motion to exclude Ms. Gill's testimony as lacking in reliability. Although Hyatt raises issues that may be appropriate to explore on cross-examination of Ms. Gill, Hyatt's objections do not render her testimony unreliable. Finally, although Ms. Gill may testify as to whether Ms. Lister's actions were consistent with foreseeable human behavior, she may not opine as to one of the ultimate issues of law in this case—whether Ms. Lister was at fault in the accident.

**B.      The Parties' Motions for Summary Judgment**

        The court now turns to the remaining motions for summary judgment. The court will first set forth the proper standard for the consideration of the parties' various summary judgment motions. Next, the court will address the remainder of Ms. Lister's motion for partial summary judgment concerning Hyatt's fifth, seventh, ninth, and twelfth affirmative defenses. (*See* 1st Plf. PSJM; Def. Supp. Resp. PSJ; Plf. Supp. Reply PSJ.) Lastly, the court will consider Ms. Lister's motion for partial summary judgment declaring her to be an invitee on Hyatt's property at the time of the accident (*see* 2d Plf. PSJM; 2d Def. Resp. PSJ; 2d Plf. Reply PSJ (Dkt. # 52)), as well as Hyatt's motion for

1  summary judgment declaring Ms. Lister to be a licensee on its property at the time of the

2  accident and that it did not breach any duty that it owed to her (*see* Def. MSJ; Plf. Resp.

3  SJ; Def. Reply SJ (Dkt. # 53).)

4      1.  <u>Summary Judgment Standard</u>

5      Summary judgment is proper when the pleadings, discovery, and other materials

6  on file, including any affidavits or declarations, show that "there is no genuine issue as to

7  any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

8  Civ. P. 56(a); *see also Miranda v. City of Cornelius*, 429 F.3d 858, 860 n.1 (9th Cir.

9  2005).  To satisfy its burden at summary judgment, a moving party with the burden of

10  persuasion "must establish beyond controversy every essential element of its . . . claim."

11  *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (internal

12  quotation marks and citation omitted).  By contrast, a moving party without the burden of

13  persuasion "must either produce evidence negating an essential element of the

14  nonmoving party's claim or defense or show that the nonmoving party does not have

15  enough evidence of an essential element to carry its ultimate burden of persuasion at

16  trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th

17  Cir. 2000) (citing *High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563,

18  574 (9th Cir. 1990)).  "If the party moving for summary judgment meets its initial burden

19  of identifying for the court the portions of the materials on file that it believes

20  demonstrate the absence of any genuine issue of material fact, the nonmoving party may

21  not rely on the mere allegations in the pleadings in order to preclude summary judgment[,

22  but instead] must set forth, by affidavit or as otherwise provided in Rule 56, specific facts

showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc.*, 809 F.2d at 630

(internal citations and quotation marks omitted) (citing, among other cases, *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 106 (1986)).

   2.   Ms. Lister's Motion for Partial Summary Judgment on Hyatt's Affirmative
        Defenses

On October 15, 2019, the court entered an order denying in part and deferring in

part Ms. Lister's motion for partial summary judgment on several of Hyatt's affirmative

defenses.  (*See* 10/15/19 Order.)  The court denied a portion of Ms. Lister's motion, but

pursuant to Federal Rule of Civil Procedure 56(d), deferred ruling on several of Hyatt's

affirmative defenses, including (1) failure to mitigate damages (fifth), (2) offset

(seventh), (3) assumption of risk (ninth), and (4) future economic damages (twelfth).  (*Id.*

at 10-15, 19.)  Following discovery, Hyatt filed a supplemental response to Ms. Lister's

motion addressing its fifth, seventh, ninth, and twelfth affirmative defenses.  (*See*

*generally* Def. Supp. Resp. PSJ.)  The court now considers the remainder of Ms. Lister's

motion for partial summary judgment on Hyatt's affirmative defenses.

   a.   *Hyatt's Fifth Affirmative Defense – Failure to Mitigate Damages*

Ms. Lister moves for partial summary judgment on Hyatt's fifth affirmative

defense of failure to mitigate damages.  (1st Plf. PSJM at 8-9.)  The doctrine of

mitigation of damages "prevents recovery for those damages the injured party could have

avoided by reasonable efforts taken after the wrong was committed." *Pub. Util. Dist. No.*

*2 of Pac. Cty. v. Comcast of Wash. IV, Inc.*, 336 P.3d 65, 76 (Wash. Ct. App. 2014)

(quoting *Bernsen v. Big Bend Elec. Coop., Inc.*, 842 P.2d 1047, 1051 (Wash. Ct. App.

1993)). "The party whose wrongful conduct caused the damages . . . has the burden of proving the failure to mitigate." *Cobb v. Snohomish Cty.*, 935 P.2d 1384, 1389 (Wash. Ct. App. 1997). In cases involving injuries, the defendant not only must establish that the injured party failed to use reasonable care to mitigate damages, but also must show—through expert testimony—that the failure to mitigate aggravated the party's injury or otherwise increased the damage suffered. *See Fox v. Evans*, 111 P.3d 267, 270 (Wash. Ct. App. 2005) ("To support a mitigation instruction, expert testimony must establish that the alternative treatment would more likely than not improve or cure the plaintiff's condition."); *Hawkins v. Marshall*, 962 P.2d 834, 838-39 (Wash. Ct. App. 1998) (finding no evidence that plaintiff's failure to follow her doctor's advice aggravated her conditions or delayed her recovery).

Hyatt argues that the court should deny Ms. Lister's motion because "[t]here were several treatment options that [Ms. Lister] either declined or unreasonably delayed in pursuing." (2d Def. Resp. PSJ at 4.) Specifically, Hyatt argues that Ms. Lister failed to mitigate her damages from (1) gait and instability issues she alleges stem from the surgical repair of her hip after her slip and fall, and (2) a torn rotator cuff that occurred when she fell allegedly due to her gait and instability issues. (*Id.* at 4-5.)

First, although Hyatt asserts that Ms. Lister "has not sought medical treatment for the gait issues" (*id.* at 5), she testifies that she has consulted both Dr. Becker and Dr. Pritchett regarding this issue (*see* Lister Dep. at 78:3-5 ("Q: . . . Who have you consulted with regarding the limp? A: Dr. Becker and Dr. Pritchett.")). Although these doctors analyzed her gait, they did not provide Ms. Lister with treatment recommendations. (*Id.*

at 78:6-9; 87:3-6.)  None of Ms. Lister's treating providers have conducted a gait analysis (*id.* at 87:3-11), but she testifies that she intends to see a medical provider at the University of Washington Medical Center regarding this issue (*id.* at 78:10-16, 86:20-87:2).

Second, Hyatt argues that Ms. Lister has not independently considered a variety of treatment options or assistive devices for her gait issues.  (2d Def. Resp. PSJ at 5.)  For example, Hyatt argues that Ms. Lister "has not sought out recommendations regarding appropriate shoes" (*id.*), but in fact her testimony indicates that none of her medical providers have made any such recommendations and she has not independently sought such advice (*see* Lister Dep. at 87:12-23).  Ms. Lister acknowledges that two of her medical experts recently recommended that she start using a walking stick, but she has not yet addressed the use of such an assistive device with her treating providers.  (*Id.* at 81:14-24.)

Third, Hyatt argues that Ms. Lister failed to mitigate her damages concerning her torn rotator cuff because although she engaged in physical therapy, her shoulder has not returned to its baseline, and she has not sought additional treatment or surgery.  (2d Def. Resp. PSJ at 6.)  Ms. Lister, however, testifies that, although she has not yet done so, she intends to seek additional guidance about treatment options for her shoulder.  (Lister Dep. at 81:25-84:14.)

The court finds *Hawkins*, 962 P.2d 834, instructive.  In *Hawkins*, a passenger who was injured in an automobile accident sued the motorist who operated the vehicle.  *Id.* at 835.  The passenger's doctor prescribed a YMCA strengthening program, which the

passenger did not attend. *Id.* The motorist argued that the trial court erred by failing to instruct the jury on the affirmative defense of failure to mitigate damages. *Id.* at 838. In ruling against the motorist, the court of appeals stated that the instruction should be used "when (1) there is evidence creating an issue of fact as to the injured person's failure to exercise ordinary care in receiving or submitting to medical treatment, and (2) the evidence permits a segregation of the damages resulting from that failure to exercise ordinary care." *Id.* (internal quotation marks omitted). Although the motorist presented evidence that the passenger failed to follow her doctor's advice, the motorist did not present testimony or other evidence that the motorist's failure aggravated her condition or delayed her recovery. *Id.* at 838-39. Accordingly, the court held that the trial court did not err in refusing to give a mitigation instruction. *Id.* at 839.

None of the testimony Hyatt presents in its supplemental response establishes that Ms. Lister failed to comply with any medical treatment or recommendations. (*See* 2d Def. Resp. PSJ at 4-7.) But even if this evidence could be so construed in the light most favorable to Hyatt, Hyatt fails to provide any expert medical testimony that Ms. Lister's conduct or omissions concerning her treatment "aggravated her conditions or delayed recovery." *See Hawkins*, 962 P.2d at 839; *see also Fox*, 111 P.3d at 270 ("To support a mitigation instruction, expert testimony must establish that the alternative treatment would more likely than not improve or cure the plaintiff's condition."). To the contrary, Hyatt's expert, Dr. Theresa L. McFarland, opines that all of the injuries Ms. Lister sustained from her June 15, 2017, fall are "fully healed." (10/22/19 Skinner Decl. (Dkt. # 37) ¶ 4, Ex. 3 (attaching copy of McFarland Report) at 9) ("For the injuries or

conditions [Ms. Lister] sustained as a result of the June 15, 2017, fall, have those injuries resolved? Yes. Her left hip fracture is fully healed.") (bolding and italics omitted).) Accordingly, the court grants Ms. Lister's motion for summary judgment on Hyatt's fifth affirmative defense for failure to mitigate damages.

### b. Hyatt's Ninth Affirmative Defense – Assumption of Risk

Ms. Lister seeks summary judgment on Hyatt's ninth affirmative defense of assumption of risk. (1st Plf. PSJM at 12-15.) In Washington, there are "four taxonomies of the assumption of risk doctrine: (1) express, (2) implied primary, (3) implied unreasonable, and (4) implied reasonable." *Pelham v. Let's Go Tubing, Inc.*, 398 P.3d 1205, 1212 (Wash. Ct. App. 2017) (citing *Gregoire v. City of Oak Harbor*, 244 P.3d 924, 928 (Wash. 2010)). The first two categories act as a complete bar to a plaintiff's recovery. *Id.* In its initial response to Ms. Lister's motion, Hyatt narrowed its assumption of risk affirmative defense to "implied primary" assumption of risk.[14] (Def. Resp. PSJ (Dkt. # 24) at 12.) Implied primary assumption of risk arises when a plaintiff assumes a danger that is inherent in and necessary to the activity. *Tincani v. Inland*

---

[14] In its supplemental response to Ms. Lister's motion, Hyatt argues that even if the court rules against it with respect to implied primary assumption of risk, its assumption of risk affirmative defense "should still stand" because the third and fourth categories of assumption of risk are considered forms of comparative fault. (Def. Supp. Resp. PSJ at 8.) Hyatt's statement is correct insofar as it goes. However, the court will not instruct the jury separately on either the third or fourth categories of assumption of risk. These categories "retain no independent significance from contributory negligence after the adoption of comparative negligence." *Scott By & Through Scott v. Pac. W. Mountain Resort*, 834 P.2d 6, 13 (Wash. 1992). "This view is reflected in the recommendation of the Washington Pattern Jury Instruction Committee that no instruction be given on "Assumption of Risk—Implied Unreasonable" or "Assumption of Risk—Implied Reasonable." *Roth v. BASF Corp.*, No. C07-106MJP, 2008 WL 2148803, at *1 (W.D. Wash. May 21, 2008); *see also* 6 Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 13.01 (7th Ed. July 2019); 6 Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 13.02 (7th ed. July 2019).

*Empire Zoological Soc'y*, 875 P.2d 621, 633 (Wash. 1994). Hyatt argues that Ms. Lister

assumed the risk of walking through vomit and slipping as she approached the restroom

near its lobby. (Def. Supp. Resp. PSJ at 7-8 ("She assumed the risk of walking through

an area with vomit on the floor.").)

In *Tincani*, a group of students visited the zoo on a school field trip. *Id.* at 623.

One of the students fell while making his way down a rock outcropping, suffering serious

injuries. *Id*. at 623-24. The zoo appealed an adverse jury verdict and argued that the

boy's conduct constituted implied primary assumption of risk that barred his recovery.

*Id.* at 624. The Washington Supreme Court ruled as a matter of law that the boy's

conduct did not constitute implied primary assumption of risk because "[t]he risk of

serious injury while visiting the zoo should not be a risk inherent in and necessary to such

an activity." *Id.* at 634.

Similarly, in *Scott*, a 12-year-old boy sustained serious head injuries while skiing

at a commercial resort. 834 P.2d at 8. While practicing on a racing course, the boy

missed a gate, left the course, and crashed into an unused tow-rope shack. *Id.* The boy's

parents sued the ski resort alleging that the race course was negligently placed too close

to the unfenced tow-rope shack. *Id.* The Washington Supreme Court reversed summary

judgment in favor of the defendants and concluded as a matter of law that while the boy

assumed the risks inherent in skiing, he did not assume the risk of the alleged negligence

of the operator in failing to provide reasonably safe facilities. *Id.* at 16.

Here too, the court concludes as a matter of law that just as the risk of serious

injury while visiting the zoo is not inherent in and necessary to that activity, *Tincani*, 875

P.2d at 634, neither is the risk of serious injury while walking to the restroom in a hotel lobby inherent in and necessary to that activity. Further, like the boy in *Scott*, who did not assume the risk of the resort operator's alleged negligence in failing to provide a reasonably safe ski facility, 834 P.2d at 16, neither did Ms. Lister assume the risk of Hyatt's alleged negligence in failing to provide a reasonably safe facility in its hotel lobby. Accordingly, the court grants Ms. Lister's motion for summary judgment on Hyatt's ninth affirmative defense of implied primary assumption of risk.

### c. *Hyatt's Seventh Affirmative Defense – Offset*

Hyatt asserts that it is entitled to an "offset" on any award of damages for any payment Ms. Lister receives from any other party, nonparty, or entity at fault. (Am. Answer (Dkt. # 11) at 5.) Ms. Lister moves for summary judgment on this affirmative defense. (1st Plf. MPSJ at 15.) Ms. Lister argues that Hyatt has provided no evidence that it paid any of Ms. Lister's expenses. (Plf. Supp. Reply PSJ at 2.) Further, Ms. Lister argues that the affirmative defense of offset does not apply to payments made by a third-party toward any portion of Ms. Lister's claimed damages. (*Id.*)

Indeed, the collateral source rule bars a defendant from reducing its liability by the amount of recovery a plaintiff receives from third parties and sources collateral to the defendant. *See Voight v. HAL Nederland, N.V.*, No. C17-1360MJP, 2018 WL 4583903, at *2 (W.D. Wash. Sept. 25, 2018). Under the collateral source rule, "benefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages." *McLean v. Runyon*, 222 F.3d 1150, 1155-56 (9th Cir. 2000) (quoting 1 Dan B. Dobbs, Law of Remedies, § 3.8(1) (2d ed. 1993)); *see also*

*Ishikawa v. Delta Airlines, Inc.*, 343 F.3d 1129, 1134 (9th Cir. 2003) ("Under the collateral source rule, the tortfeasor is not entitled to be relieved of the consequences of its tort by some third party's compensation to the victim."). "The rule 'does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for him.'" *Solis-Diaz v. Las Vegas Metro. Police Dep't*, 2017 WL 374908, at *2 (D. Nev. Jan. 25, 2017) (quoting Restatement (Second) of Torts, § 920A cmt. b) (Am. Law Inst. 1979)).

Nevertheless, even if Hyatt could offset such payments, Hyatt provides no evidence that it or any other entity or person made any payments to Ms. Lister for her alleged damages. (*See* Def. Supp. Resp. PSJ at 9 ("[Ms. Lister] has not identified any third-party who has paid for her claimed expenses or damages.").) Accordingly, the court grants summary judgment to Ms. Lister on Hyatt's seventh affirmative defense of offset.

### d. *Hyatt's Twelfth Affirmative Defense – Future Economic Damages*

In its twelfth affirmative defense, Hyatt states that if an award for future economic damages meets the statutory threshold amount, it intends to invoke the provisions of RCW 4.56.260. (Am. Answer at 6.) Indeed, if a defendant fails to provide a plaintiff with sufficient notice that the defendant intends to rely on the periodic payment protections of RCW 4.56.260, the defendant may lose those protections. *See Esparza v. Skyreach Equip., Inc.*, 15 P.3d 188, 202 (Wash. Ct. App. 2000). However, as both parties acknowledge, Ms. Lister is not claiming any future economic damages in this case. (Plf. Supp. Reply PSJ at 4 ("[Ms. Lister] is not claiming any future economic damages."); Def. Supp. Resp. PSJ at 9 ("[Ms. Lister] does not have any viable claims for future economic

damages. . . .").)  Because future economic damages are not at issue in this case, the court grants Ms. Lister's motion for summary judgment on this affirmative defense.

>     *e.  Summary*

The court grants summary judgment in favor of Ms. Lister on the following affirmative defenses:  (1) failure to mitigate damages (fifth); (2) implied primary assumption of risk (ninth); (3) offset (seventh); and (4) future economic damages (twelfth).  As stated in its October 15, 2019, order, the court denies Ms. Lister's motion for summary judgment on Hyatt's other affirmative defenses.  (*See generally* 10/15/19 Order.)

>     6.  <u>Ms. Lister's Motion for Partial Summary Judgment Declaring Her to be an Invitee on Hyatt's Property and Hyatt's Motion for Summary Judgment</u>

Ms. Lister moves for partial summary judgment asking the court to find that she was an invitee at the Hyatt on the night of her slip and fall.  (*See generally* 2d Plf. PSJM.)  Hyatt, on the other hand, asks the court to find that Ms. Lister was a mere licensee on its property at the time of the accident, and on this basis, to grant summary judgment on Ms. Lister's claims in Hyatt's favor.  (*See generally* Def. MSJ.)  The distinction is critical because, in Washington, "[t]he legal duty owed by a landowner to a person entering the [landowner's] premises depends on whether the entrant falls under the common law category of trespasser, licensee, or invitee."  *Iwai v. State*, 915 P.2d 1089, 1092 (Wash. 1996) (citing *Younce v. Ferguson*, 724 P.2d 991, 993 (Wash. 1986)).  The difference between the duty of care owed to licensees and invitees is that, with respect to licensees, a landowner or occupier has no duty to "prepare a safe place" or "affirmatively seek out

and discover hidden dangers." *Tincani*, 875 P.2d at 628 (quoting *Memel v. Reimer*, 538 P.2d 517, 519 (Wash. 1975)). Further, with respect to a known dangerous condition, the landowner or occupier can fulfill its duty to exercise reasonable care either by providing a warning about the condition or by taking of corrective action. *Id.* In contrast, a landowner or occupier owes an affirmative duty to an invitee to use reasonable care to make the property safe for his or her entry. *Id.* at 631. This requires a landowner or occupier to inspect for dangerous conditions and to take corrective measures to protect the personal safety of invitees. *See id.* at 631. As discussed below, the court concludes, as a matter of law, that Ms. Lister was an invitee at the Hyatt on the night of her slip and fall. Accordingly, the court grants Ms. Lister's motion for partial summary judgment on this issue. Further, because Hyatt's motion for summary judgment on Ms. Lister's claims is premised on Ms. Lister's status as a licensee (*see* Def. MSJ at 11-14.), the court denies Hyatt's motion for summary judgment.

Under Washington law, an invitee is either a business visitor or a public invitee. *Thompson v. Katzer*, 936 P.2d 421, 423 (Wash. Ct. App. 1997) (citing *McKinnon v. Wash. Fed. Sav. & Loan Ass'n*, 414 P.2d 773, 777 (Wash 1966) (adopting Restatement (Second) or Torts § 332(1) (Am. Law Inst. 1965)); *Younce*, 724 P.2d at 995). "A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *McKinnon*, 414 P.2d at 777 (adopting Restatement (Second) of Torts § 332(3) (Am. Law Inst. 1965)); *see also Younce*, 724 P.2d at 996. In contrast, "[a] public invitee is a person who is invited to enter and remain on land as a member of the public for a purpose for

which the land is held open to the public." *McKinnon*, 414 P.2d at 777 (adopting Restatement (Second) of Torts § 332(2)); *Younce*, 724 P.2d at 995. When the facts regarding a visitor's entry onto property are undisputed, the visitor's legal status is a question of law. *Beebe v. Moses*, 54 P.3d 188, 189 (Wash. Ct. App. 2002) (citing *Ford v. Red Lion Inns*, 840 P.2d 198, 200 (Wash. Ct. App. 1992)).

Based on the business connection between Hyatt and 13 Coins at the time of Ms. Lister's fall, the parties spend much of their briefing analyzing whether Ms. Lister was a business visitor who was invited to enter the Hyatt for a purpose indirectly connected to Hyatt's business. (*See* 2d Plf. PSJM at 7-9; 2d Def. Resp. PSJ at 4-8; 2d Plf. Reply PSJ at 2-3; Def. Reply MSJ (Dkt. 53) at 3-5.) The court, however, need not decide this issue because the undisputed evidence shows that Ms. Lister was a public invitee.

The basis for the court's decision that Ms. Lister was a public invitee is grounded in the undisputed deposition testimony of Hyatt's Federal Rule of Civil Procedure 30(b)(6) deponent, who testified as follows:

> Q. So you agree that the Hyatt lobby is open to the public?
> A. Yes.
> Q. Is anyone excluded from the lobby other than somebody that you've trespassed?
> A. No.
> Q. Are you aware that sometimes people use the restrooms at the Hyatt who aren't actually staying there overnight?
> A. Yes.
> Q. Is anyone ever excluded from using the restroom at the Hyatt if they're not staying there overnight unless they're trespassed?
> A. No.
> Q. Has the Hyatt ever -- have you ever prohibited anybody from using the restrooms in the lobby except for people who have been trespassed?
> A. No, to the best of my knowledge.

> Q. Are there any signs anywhere on the premises that indicate that only guests of the Hyatt are to use the restrooms?
> A. No.
> Q. Would you agree that those restrooms are open to the general public?
> A. Yes.
> Q. So if I were to walk in there, nobody would tell me I couldn't use the restroom?
> A. Correct.

(Clark Dep. at 42:4-43:6.) Thus, it is undisputed that Hyatt held both its lobby and the restrooms adjacent to its lobby open to the general public. This admission places Ms. Lister squarely within the definition of a public invitee as "a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." *See McKinnon*, 414 P.2d at 777.

Nevertheless, Hyatt argues that Ms. Lister was not a "public invitee" because Hyatt did not issue an "invitation" for Ms. Lister to enter.[15] (*See* Def. Reply MSJ at 6 ("Hyatt did not invite diners from 13 Coins into the hotel lobby to use the restroom.").) Hyatt is correct that an invitation is essential to the status of an invitee. *See* Restatement (Second) of Torts § 332 cmt. b ("Although invitation does not in itself establish the status of an invitee, it is essential to it.").[16] Yet, the invitation need not be express; an implied invitation will suffice. *See Botka v. Estate of Hoerr*, 21 P.3d 723, 727 (Wash. Ct. App. 2001) ("An invitee is one who is expressly or impliedly invited on the premises of

---

[15] Hyatt asserts that it merely "tolerates" the use of its lobby restrooms by visitors to 13 Coins or other establishments in the joint complex. (Def. Reply MSJ at 6-7.) Hyatt cites no evidence to support this assertion, and indeed, it is contrary to the testimony of Hyatt's Rule 30(b)(6) deponent who admitted that Hyatt holds both its lobby and the adjacent restrooms open to the public. (Dantes Dep. at 42:4-43:6.)

[16] *See McKinnon*, 414 P.2d at 777 (adopting Restatement (Second) of Torts § 332).

another.") (citing *Dotson v. Haddock*, 278 P.2d 338, 340 (Wash. 1955)).  The

Restatement (Second) of Torts counsels that "an invitation is conduct which justifies

others in believing that the possessor desires them to enter the land."  Restatement

(Second) of Torts § 332 cmt. b.  Further, "[a]ny words or conduct of the possessor which

lead or encourage the visitor to believe that his [or her] entry is desired may be sufficient

for the invitation."  *Id.*

The undisputed evidence in this case is that Hyatt's lobby and 13 Coins are

adjoined by a pair of interior doors, which were wide open on the night of Ms. Lister's

fall.  (Lister Dep. at 32:3-16.)  The fact that these two establishments—Hyatt and 13

Coins—were adjoined by an interior, open, double doorway would lead a reasonable

person standing in either establishment to believe that their entry into the other

establishment was desired.  Thus, the court concludes that Hyatt's conduct of placing an

interior, adjoining, double doorway between itself and 13 Coins, and opening that double

doorway between the two establishments, is conduct that would encourage a visitor

standing in 13 Coins to believe that his or her entry into Hyatt's lobby was desired.  Thus,

the court concludes that, by its conduct, Hyatt issued an implied invitation for guests of

13 Coins to enter its lobby.

Moreover, the Restatement (Second) also clarifies that "[w]here land is held open

to the public, there is an invitation to the public to enter for the purpose for which it is

held open."  Restatement (Second) of Torts § 332 cmt. d (Am. Law Inst. 1965).  "Any

member of the public who enters for that purpose is an invitee."  *Id.*; *see also Wright v.*

*Mt. Mansfield Lift*, 96 F. Supp. 786, 790 (D. Vt. 1951) ("Whenever one makes such use

of another's premises as the owner intends he shall, or such as he is reasonably justified

in understanding that the owner intended, this is an implied invitation to enter onto the

land of another."). As noted above, Hyatt expressly admits that it holds both its lobby

and the restrooms adjoining its lobby open to the general public. (Clark Dep. at

42:4-43:6.) Thus, the court also concludes that there is an implied invitation to the public

to enter Hyatt's lobby for the purpose of using its restrooms.

Hyatt also argues that Ms. Lister was a mere licensee because she entered Hyatt's

lobby "solely for her own purpose and benefit of using the restrooms" and "had no

business with the Hyatt at the time of her fall." (Def. Reply MSJ at 7.) However,

"[w]here land is held open to the public, it is immaterial that . . . the visitor's presence is

in no way related to business dealings with the possessor, or to any possibility of benefit

or advantage, present or prospective, pecuniary or otherwise, to the possessor."

Restatement (Second) of Torts § 332 cmt. d (Am. Law Inst. 1965). Given Hyatt's

admission that it held its lobby and adjacent restrooms are open to the public (*see* Clark

Dep. at 42:4-43:6), it is irrelevant that Ms. Lister entered Hyatt's lobby for a

non-pecuniary purpose.

Finally, the court finds persuasive the Restatement (Second)'s fourth illustration of

a public invitee. *See* Restatement (Second) of Torts § 332 cmt. d, illus. 4. The

illustration is as follows: "A maintains in his drugstore a free telephone for the use of the

public. B enters the store for the sole purpose of using the telephone. B is an invitee."

*Id.* Similarly, Hyatt maintains in its hotel both its lobby and the adjacent restrooms for

the use of the public.  Ms. Lister entered Hyatt's lobby for the sole purpose of using the restroom.  Ms. Lister, therefore, is an invitee.

Based on the foregoing analysis, the court concludes as a matter of law that Ms. Lister was a public invitee on Hyatt's premises when she entered Hyatt's lobby from 13 Coins on June 15, 2017, for the purpose of using Hyatt's restrooms.  Accordingly, the court grants Ms. Lister's motion for partial summary judgment on this issue.

Because the court has determined that Ms. Lister was a public invitee, the court also denies Hyatt's motion for summary judgment.  Hyatt's motion is premised on Ms. Lister's status as a licensee at the time of her accident.  (*See* Def. MSJ at 12-14.)  As discussed above, the standard of care that Hyatt owed to Ms. Lister, as an invitee, is higher than it would have owed were she merely a licensee.  *See Iwai*, 915 P.2d at 1092. Thus, the court denies Hyatt's motion because it analyzes Hyatt's duty to Ms. Lister under a standard of care that is too lenient.

## IV.    CONCLUSION

As described in detail above, the court (1) GRANTS in part and DENIES in part Ms. Lister's motion for summary judgment on certain affirmative defenses (Dkt. # 22);[17] (2) GRANTS in part and DENIES in part Hyatt's motion to exclude expert testimony (Dkt. # 40); (3) GRANTS Ms. Lister's motion for partial summary judgment on her

//

//

---

[17] (*See also* 10/15/19 Order at 7-10, 16-19 (denying portions of Ms. Lister's motion for summary judgment on Hyatt's affirmative defenses).)

status as an invitee (Dkt. # 32); and (4) DENIES Hyatt's motion for summary judgment (Dkt. # 30).

      Dated this 9th day of December, 2019.

JAMES L. ROBART
United States District Judge